Patrick M. Flatley
United States Bankruptcy Judge

Dated: Monday, September 30, 2013 11:17:01 AM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                              )
                                    )
KATHLEEN NELLIS COLE,               )    Case No. 10-925
                                    )
            Debtor.                 )    Chapter 13
_____        )

**MEMORANDUM OPINION**

Aaron C. Amore, counsel for Kathleen Cole ("Debtor"), seeks $18,104.75 in supplemental compensation for services rendered in this case beyond one year from the petition date based upon the nature and complexity of the issues involved in the case. The Chapter 13 trustee ("Trustee") objects to the supplemental compensation on the ground that the case did not present novel legal issues and the expenses related to the Debtor's unreasonable legal position regarding projected disposable income should not be borne by creditors of the bankruptcy estate.

For the reasons stated herein, the court will grant Mr. Amore's application, in part.

## I. BACKGROUND

On April 27, 2010, the Debtor filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. The Disclosure of Compensation of Attorney For Debtor ("Disclosure")[1] filed by the Debtor reflects that Mr. Amore agreed to accept $4,500.00 for certain legal services: $1,500.00 paid prepetition and $3,000.00 to be paid through the Debtor's Chapter 13 plan of repayment.

On June 24, 2010, the Trustee objected to the Debtor's proposed plan based on the U.S. Supreme Court's decision in *Hamilton v. Lanning,* --- U.S. ---, 130 S.Ct. 2464 (2010). The Trustee argued that the Debtor was not devoting all of her disposable income to the repayment of her

---

[1] Official Form B203.

1

creditors: Although the Debtor's original Schedules I and J indicated monthly net income of $1,928.72 based upon the Debtor's proposed plan to strip a second-position deed of trust encumbering the Debtor's residence and to surrender another parcel of real property, the Debtor's proposed plan contemplated monthly payments to the Trustee of only $263.00. The Trustee's disposable income objection was the only impediment to the Debtor obtaining confirmation of her proposed Chapter 13 plan.[2]

On March 29, 2012, more than twenty months after the date first set for confirmation in this case and after several continuances granted to permit protracted negotiations between the Debtor and Trustee, the court held an evidentiary hearing to determine whether the Debtor was devoting all her projected disposable income to her proposed Chapter 13 plan. On August 28, 2012, the court entered an order finding that the she was not. In sustaining the Trustee's objection, the court found that the Debtor's income and expense predictions were consistently unreliable when compared to her monthly operating reports filed with the Trustee for the same time period. Notably, the court was persuaded by the Trustee's argument that the Debtor's projections were inaccurate partly because the Debtor twice included her business expenses in deriving her proposed payment — subtracting the business expenses once in determining the net income from the operation of her business and again in calculating her projected disposable income. *In re Cole*, No. 10-925, slip op. at 4, n.5 (Bankr. N.D.W. Va. Aug. 28, 2012). Similarly, the court found that the Debtor's calculation of monthly income from the operation of her business was inaccurate because the Debtor included as monthly business expenses a deduction for amounts drawn on her capital account and a deduction for her use of a home office. *Id*. at n.6. Rather than finally determine what the Debtor's projected disposable income was — a determination that may have ultimately caused the Debtor to be unable to perform under a Chapter 13 plan — the court left the amount of projected disposable income undetermined to allow the Debtor to negotiate with the Trustee and formulate a new proposed Chapter 13 plan.

The Debtor never filed an amended proposed Chapter 13 plan, but the Debtor and Trustee

---

[2] The Debtor also filed an adversary proceeding to strip the second-position deed of trust on her property held by Bank of Charles Town. That proceeding was resolved via a consent order entered December 21, 2010, just under five months after it was filed.

2

submitted an agreed confirmation order, which the court entered on November 7, 2012. The confirmation order provides that the Debtor, among other things, will make monthly plan payments of $1,500.00 for a period of thirty months from confirmation. The confirmation order also approves Mr. Amore's compensation of $4,500.00. At the time the court entered its order, the anticipated distribution to unsecured creditors was thirty-three percent.[3]

On November 8, 2012, Mr. Amore filed his application for supplemental compensation for fees and costs in excess of the retainer agreement he executed with the Debtor. The application was noticed to the creditor body, and no written objections to the application were filed. Nonetheless, the court set the matter for hearing to confirm that no creditor objected to the application seeking $18,104.75 in additional compensation to be paid from the bankruptcy estate — which amounts to an 11% reduction in the dividend to unsecured creditors. Only Mr. Amore and the Trustee participated in the January 15, 2013 telephonic hearing. At that time, the Trustee objected to Mr. Amore's supplemental fee application.

After taking Mr. Amore's fee application under advisement, the court ordered Mr. Amore to file with the court the retainer agreement executed by him and the Debtor in relation to his retention in this case because his Disclosure was not a complete statement of his agreement with the Debtor for payment for representation in this case. The court subsequently held a telephonic hearing on April 23, 2013, to address three issues: First, whether Mr. Amore intended to seek reimbursement for attorney fees from the Debtor for any amounts allowed over and above the fees noted in the Disclosure but not permitted to be paid from the bankruptcy estate which, if so, would require the Debtor's direct participation in the fee determination; second, apparent ambiguities in the retainer agreement regarding Mr. Amore's ability to charge at an hourly rate for "basic" services provided by him beyond the first twelve months after filing; and third, inconsistencies regarding the amount of compensation to be received pursuant to the agreement compared to what is provided for in the Disclosure. Importantly, Mr. Amore stated that he would not seek payment from the Debtor if the court denied in whole or in part his request for compensation from the estate, and otherwise clarified

---

[3] The court entered the proposed confirmation order without notice to interested parties because the Trustee is the only party that objected to the Debtor's proposed plan and the terms of the confirmation order are more favorable to creditors of the bankruptcy estate than the Debtor's proposed plan.

3

the court's concerns surrounding his agreement with the Debtor. Upon the conclusion of the hearing, the court took the matter under advisement.

## II. DISCUSSION

Mr. Amore asserts that the court should grant his supplemental application because the Debtor's case presented novel and complex issues that made it necessary for him to expend an unusual amount of time guiding the Debtor's case to confirmation. The Trustee asserts that the application should be denied, or at least limited to a supplemental award of $2,160.00, because the bankruptcy estate's creditors should not be saddled with the cost of attorney fees incurred through the Debtor's pursuit of what the Trustee characterizes as an unreasonable position regarding the amount of projected disposable income to be devoted to the Debtor's plan.[4]

"An entity seeking . . . compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). Because Chapter 13 cases are form driven and generally require a predictable amount of work, bankruptcy courts in many districts throughout the United States have simplified the procedure for approving fees in Chapter 13 cases that do not exceed a certain amount, commonly known as a "no-look" fee.[5]

Professionals seeking compensation are not limited to the "no-look" fee. Rather, the "no-look" fee is only intended to simplify the application process in the large majority of cases in which

---

[4] The Trustee acquiesces to additional compensation of $2,160.00 based upon Mr. Amore's work for filing amended schedules and representing the Debtor at the contested confirmation hearing in this case as reflected in his billing statement.

[5] For instance, pursuant to its Standing Order 08-1, the Bankruptcy Court for the Eastern District of Virginia relieves debtors counsel of their obligation under Rule 2016(a) if they agree to accept attorney fees of not more than $3,000.00 so long as the total fee and unpaid portion are clearly set forth in the Chapter 13 plan and the fee is consistent with counsel's Disclosure. Similarly, by standing order dated January 3, 2013, the Bankruptcy Court for the Middle District of North Carolina presumes a base fee of $3,700.00 is reasonable for usual and ordinary services involved in representing a Chapter 13 debtor. And pursuant to Appendix F to its Local Rules, the Bankruptcy Court for the District of Maryland permits debtor's counsel to accept a presumptively reasonable fee without application or approval; the fee ranges from $2,000.00 to $4,500.00 for certain services.

that amount will provide reasonable compensation. If the attorney knows from the inception of the case that unusual issues are present, the attorney may file a formal fee application; or counsel may file an application for additional compensation if the need arises for services that were not reasonably anticipated when the "no-look" fee was requested.

This district does not have a "no-look" fee established by local rule or general order; nor does the court require formal fee applications under Fed. R. Bankr. P. 2016(a). Rather, the local practice tolerated by the court and the Trustee is to treat the Disclosure, most often depicting a flat fee, as counsel's fee application under Fed. R. Bankr. P. 2016(a). Although the court does not require Chapter 13 counsel to file formal fee applications, its orders confirming Chapter 13 plans routinely approve the attorney fee disclosed by counsel on the Disclosure, which is to be paid as an administrative expense of the estate for pre- and post-petition work performed in the case; the formal requirements of a fee application pursuant to Fed. R. Bankr. P. 2016(a) are therefore deemed satisfied by the court's confirmation order. Based upon this local practice, complete and accurate disclosure in Chapter 13 cases in this district is paramount. *See* 9 *Collier on Bankruptcy* ¶ 2016.18 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (internal quotation omitted) ("It is only by review of the 2016(b) statement that the trustee, the court, or any interested party can be apprised of the debtor's intentions to pay counsel before such payment occurs, and of any additional services that counsel intends to perform."). Additionally, the Disclosure is generally based upon certain legal services to be provided to a Chapter 13 debtor (i.e., including negotiations with secured creditors; exemption planning; preparation and filing of reaffirmation agreements; drafting a Chapter 13 plan; and advocating for confirmation of the debtor's plan; but excluding, among other things, adversary proceedings) and not on the amount of time spent providing those services; an attorney accepting a flat fee does so knowing that the fee represents reasonable compensation for those services he agrees to provide regardless of the time spent rendering those services.[6]

---

[6] In seeking supplemental compensation, Mr. Amore conflates the district's tolerated flat-fee application process, where counsel's Disclosure is ultimately approved by virtue of the court's confirmation order, with a traditional fee application process reserved to cases wherein counsel simply bills time at an hourly rate. His fee agreement with the Debtor consists of two components: a flat fee for the first year of the case and hourly billing for all subsequent work regardless of whether work performed beyond the one year was of a nature usually encompassed by a flat fee.

5

Before addressing the merits of whether Mr. Amore is entitled to reimbursement of the fees and expenses he requests in his supplemental application, the court finds it necessary to address its duty to review applications for compensation. Although Mr. Amore argues that the Trustee's late filed objection should not be considered by the court, the court has an independent duty to review fee applications even in the absence of an objection. *In re Wyche*, 425 B.R. 779, 792 (Bankr. E.D. Va. 2010); *In re Snyder*, 445 B.R. 431, 438 (Bankr. E.D. Pa. 2010) (citing *In re Busy Beaver Bldg. Ctrs. Inc.*, 19 F.3d 833, 841-45 (3rd Cir. 1994)).

> The Court's responsibility in awarding fees is great, as each creditor individually has little reason to object to requested compensation due to the costs incidental to the objection which it would incur when compared to the possible amount of recovery from the estate. The Office of [the] United States Trustee . . . offers some solace . . . but the ultimate responsibility lies with the Court.

*In re Great Sweats, Inc.*, 113 B.R. 240, 242 (Bankr. E.D. Va. 1990). This duty is based on the need to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *In re Busy Beaver Bldg. Ctrs. Inc.*, 19 F.3d at 844. Such a responsibility is heightened in reviewing and awarding fees in Chapter 13 cases. *See In re Grubb*, No. 07-30253-KRH, 2010 WL 396181, at *5 (Bankr. E.D. Va. Jan. 25, 2010) (citing *In re Courtois*, 222 B.R. 491, 494 (Bankr. D. Md. 1998) ("Such duty to independently review professional fee applications in Chapter 13 cases becomes a particularly important supervisory function of the court when neither the debtors nor most creditors have an incentive to object to attorney's fees.")) (internal quotations omitted).

---

The court finds this type of hybrid agreement — a flat fee coupled with hourly billing after a certain point in time — to run afoul of the underlying purpose of ultimately approving counsel's attorney fees based upon the Disclosure. The court expects counsel practicing before it to either accept a flat fee for certain disclosed bankruptcy services, regardless of the amount of time ultimately spent performing those services, or file a traditional fee application based upon hourly billing. *See In re Snyder*, 445 B.R. 431, 441 (Bankr. E.D.Pa. 2010) (citation omitted). If counsel accepts a flat fee, supplemental fees should be sought only when the need arises for services that were not reasonably anticipated when the flat fee was requested; navigating a proposed Chapter 13 plan to confirmation over a trustee's disposable income objection is a reasonably anticipated service absent unusual circumstances. *See In re Grubb*, No. 07-30253-KRH, 2010 WL 396181, at *4 (Bankr. E.D. Va. Jan. 25, 2010) (finding supplemental fee applications to not be appropriate for expanding the amount of the "no look" fee requested in an otherwise routine Chapter 13 case).

6

Turning to Mr. Amore's application, the court will award compensation "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor as well as the other factors set forth in [§ 330 of the Bankruptcy Code]." 11 U.S.C. § 330(a)(4)(B). The other factors set forth in the statute are:

> the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [title 11];
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [title 11].

§ 330(a)(3). In addition to the factors set forth in § 330(a)(3), the U.S. Court of Appeals for the Fourth Circuit has instructed bankruptcy courts to review fee applications in light of the following twelve factors (the "*Johnson* factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorneys' fees awards in similar cases.

*Harman v. Levin*, 772 F.2d 1150, 1151 n.1 (4th Cir. 1985) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Because the language in § 330(a)(3) instructs the court to "tak[e] into account all relevant factors," the court will consider the *Johnson* factors in addition to those articulated under § 330(a)(3). *In re Grubb*, No. 07-30253-KRH, 2010 WL 396181, at *4

7

(Bankr. E.D. Va. Jan. 25, 2010). The applicant has the burden of demonstrating that the fees and expenses requested are reasonable, *In re Goodbar*, 456 B.R. 644, 648 (Bankr. W.D. Va. 2011) (citation omitted), and "[t]he determination of what is a reasonable amount of compensation is within the sound discretion of the court." *Id.* (citing *In re Breeden*, 180 B.R. 802, 808 (Bankr. N.D.W. Va. 1995)); *see Berliner v. Pappalardo (In re Sullivan)*, 674 F.3d 65 (1st Cir. 2012).

After considering the factors under § 330(a)(3) and the *Johnson* factors in connection with the court's familiarity with the issues, pleadings, and proceedings in the case juxtaposed to Mr. Amore's hourly billing statement, the court finds that Mr. Amore has not demonstrated the reasonableness of the total fee requested in his supplemental application. In that regard, the court's analysis centers around the novelty and difficulty of the issues raised by the Debtor's case, the time and labor expended regarding those issues, the customary fee for like work, Mr. Amore's expectations at the outset of the litigation, and the benefit to the Debtor. The court considered the other factors, but finds them to be inapplicable in this case. Although Mr. Amore has not demonstrated the reasonableness of the total fee requested, the court finds that some additional compensation is necessary to fairly compensate him for the reasonable value of his services.

The Debtor's case did not present novel or difficult issues. The legal issues in this case that precipitated most of Mr. Amore's work — the adversary proceeding and the Trustee's objection to confirmation of the Debtor's plan — are substantially similar to most Chapter 13 cases filed in this district. Factually, the case did present some unique challenges because the Debtor is engaged in business and thus subject to the provisions of 11 U.S.C. § 1304, and the nature of the Debtor's business presented some additional challenges to gathering and documenting relevant information, as well as developing a proposed Chapter 13 plan of repayment. Based upon the court's review of Mr. Amore's time records submitted in conjunction with his supplemental application, however, the vast majority of Mr. Amore's work in this case related to factual, not legal, issues surrounding the Trustee's disposable income objection to the Debtor's proposed plan.

The Debtor's original proposed Chapter 13 plan contemplated monthly installments of $263.00 over a period of sixty months. The Trustee, relying on *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010), objected on the basis that the Debtor was not devoting all of her projected disposable income to the repayment of her unsecured creditors. The Trustee's objection was the only impediment that stood between the Debtor and confirmation of a Chapter 13 plan of repayment —

8

a common obstacle to Chapter 13 debtors;[7] ultimately, the parties agreed that the Debtor would devote to her plan monthly payments of $1,500.00 for a period of thirty months, plus pre-confirmation payments of $11,207.72 and a single payment of $11,000.00 to be paid on or before May 15, 2015.

Notably, the parties' inability to reach an agreement on projected disposable income largely was not due to complicated legal issues but was due to the Debtor's inability to properly account for her business expenses in projecting her disposable income. The Debtor asserts that the issue raised by the Trustee's disposable income objection presented a novel and complicated legal issue in an evolving legal environment. The Supreme Court decided *Hamilton* on June 7, 2010, a little over one month after the Debtor filed her Chapter 13 petition, and largely settled the issues surrounding the determination of projected disposable income: "[W]hen a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton*, 130 S. Ct. at 2478. As of the petition date in this case, however, the law in this district was such that an above-median-income debtor's projected disposable income was determined by Official Form B 22C (the "Means Test"). Here, the Debtor's monthly disposable income based upon her Means Test was negative $79.51 thus justifying her initial proposal to make monthly plan payments of $263.00. Nonetheless, the court is unpersuaded that this case presented novel or difficult legal issues that warrant the total amount of compensation being sought here. *See Snyder*, 445 B.R. at 441 (citation omitted) ("While it required Counsel to file amended schedules and amended plans, that scenario is not unusual in Chapter 13 cases. Moreover, it is not at all unusual for a Chapter 13 case to involve motions for relief from stay, motions to dismiss by the trustee, objections to confirmation and objections to claims.").

In this case, the court's analysis regarding the novelty and difficulty of the issues presented

---

[7] The Debtor also filed an adversary proceeding against Bank of Charles Town to strip a second-position deed of trust encumbering the Debtor's property; that proceeding was resolved by consent less than five months after it was filed. Although attorney fees incurred prosecuting the adversary proceeding were excluded from the Mr. Amore's Disclosure, the $4,500.00 disclosed by Mr. Amore included a $1,000.00 flat fee for the proceeding to be paid through the Debtor's plan.

9

dovetails with its analysis of the amount of time and labor expended by Mr. Amore. The Debtor's shortcomings in properly accounting for her business expenses when projecting disposable income caused Mr. Amore to spend an inordinate amount of time on her behalf given the facts of this case. Although the Trustee and the court do not dispute that Mr. Amore actually spent the time for which he seeks compensation, the total amount of supplemental compensation sought by Mr. Amore is not reasonable because the majority of services he performed were not due to the complexity of the Debtor's case but were performed in gathering information and communicating with the Debtor and the Trustee in an attempt to negotiate a resolution of the Trustee's objection to the Debtor's proposed plan. Specifically, the Debtor's multiple amended Schedules I and J; most, if not all of the dozens of spreadsheets prepared and analyzed; and multiple income and expense statements were formulated, analyzed, and provided in negotiations with the Trustee for the purpose of showing an impending decline in projected disposable income — a showing the Debtor was ultimately unable to make.

      Although the court is satisfied with the general nature of Mr. Amore's services as reflected by his billing statement's various "project categories" — categories of service the court typically expects to see rendered to a debtor in a similar case — the amount of time and labor expended providing those services is not reasonable based upon the lack of complexity in this case. Additionally, many entries lack clarity, making it impossible to discern the nature, necessity, and relevance of the service being rendered and whether it constitutes work for which compensation is reasonable. For example, page two of Mr. Amore's billing statement includes entries in the "Reporting/Accounting/Sch." category with the following statements for the description of work performed: "long term care.pdf Insurance," "2011 home office.xlsx," and "life insurance.pdf." Page five contains similar entries in the "Financing/Cash Collections" category, describing work such as "united bank 8269 8.1.11 to 12.27.11.pdf." Because Mr. Amore's billing statement is replete with such entries the court is left simply guessing what work Mr. Amore may be performing, and a mathematically rigorous adjustment to the supplemental application is not possible. *See In re Robinson*, 368 B.R. 492, 501 (Bankr. E.D. Va. 2007) (finding sixty percent of counsel's fee request to be reasonable); *In re Graham*, No. 12-11152-JMD, 2013 WL 587305, at *3 (Bankr. D.N.H. Feb, 14, 2013) (citing *Lopez v. Consejo De Titulares Del Condominio Carolina Ct. Apts.*, 405 B.R. 24, 30-31 (B.A.P. 1st Cir. 2009) (noting that the court need not follow a "rigid prescription" in reducing

10

an overall fee award)).

Regarding the customary fee charged for similar work, the court finds Mr. Amore's base fee for bankruptcy services to be within the range generally charged in similar cases. As noted above, although the Debtor is engaged in business, the activity in this case was substantially similar to most Chapter 13 cases in this district. The Disclosure reflected a fee of $4,500.00, which the court observes is at the upper end of what counsel receives for the majority of Chapter 13 cases filed in this district; the customary fee charged for Chapter 13 cases in this district, particularly in the Martinsburg division, is generally between $2,500.00 and $4,500. Here, however, the $4,500.00 included a flat fee of $1,000.00 for the prosecution of an adversary proceeding against Bank of Charles Town, leaving $3,500.00 to compensate Mr. Amore for services to be rendered in conjunction with the bankruptcy case. Although this case is substantially similar to most Chapter 13 cases filed in this district, Mr. Amore should receive some additional compensation because the case did come with the need for additional work and services given that the Debtor is engaged in business and the law in this district regarding projected disposable income changed shortly after the Debtor filed for bankruptcy relief.

As for Mr. Amore's expectations at the outset of this case, he asserts that this was a difficult case from its inception due to the Debtor's ownership of multiple parcels of real property, income and cash flow issues, and the Debtor being a high-income debtor with multiple sources of income and varying business expenses. Thus it appears that Mr. Amore knew this case might require additional time and effort. In the bankruptcy context, particularly regarding a Chapter 13 case where counsel accepted a flat fee, this factor weighs against a supplemental award of attorney fees. Given the added difficulty of this case recognized from the beginning, Mr. Amore should have either accepted a larger flat fee for his bankruptcy services or entered into a fee arrangement whereby he would bill his time on an hourly basis and file a traditional fee application, to be adjudged by the court for reasonableness under § 330(a)(3), rather than entering into a hybrid agreement with the Debtor and disclosing only one element thereof to the court and interested parties.[8]

---

[8] Mr. Amore's Disclosure in this case was inadequate as it was merely a partial disclosure; it only disclosed the amount of compensation Mr. Amore agreed to accept for representing the Debtor during the first year of the case, but his agreement with the Debtor also included provisions for him to bill at an hourly rate for work performed beyond the first year.

11

Finally, considering Mr. Amore's overall benefit to the Debtor in light of its foregoing analysis, the court finds additional compensation in a reduced amount is appropriate. Here, the Debtor originally proposed monthly plan payments of $263.00 for 60 months for a total base of $15,780.00. The Trustee, through her objection to the Debtor's proposed plan, advocated for monthly payments for 60 months at or near $1,928.72 for a total base of $115,723.20. Ultimately, Mr. Amore was able to negotiate a reduction in the total base to $67,207.72 — just over a forty percent reduction in the base initially advocated for by the Trustee. Therefore, the court will consider the significant benefit to the Debtor along with its analysis of the other factors considered in awarding Mr. Amore supplemental compensation.

### III. CONCLUSION

Because the majority of the activity in this case stemmed from the Trustee's objection to the Debtor's proposed plan, a matter routinely encountered in Chapter 13 cases in this district, the court cannot approve Mr. Amore's supplemental application for $18,104.75 in additional attorney fees — six times the amount disclosed as compensation in this case. *See Snyder*, 445 B.R. at 441 (finding an award of fees nearly three times the flat fee disclosed by counsel to be neither reasonable nor acceptable where the services rendered to the debtor were included in the flat fee based on counsel's Disclosure). The court, nonetheless, recognizes that the $3,500.00 flat fee Mr. Amore agreed to receive for representing the Debtor in her bankruptcy case does not adequately compensate him for the services he rendered in the case given the reasonable and necessary requirements of the case and the benefit he conferred upon the Debtor. The court finds, based upon its analysis herein, that a forty percent reduction in Mr. Amore's requested compensation fairly compensates Mr.

---

Neither the Trustee nor the court were aware of the structure of Mr. Amore's fee arrangement until he filed his current application.

Fee disclosure under § 329 and the bankruptcy rules is mandatory, and counsel's failure to fully and accurately disclose his fee arrangement with the debtor subjects counsel to sanctions including a total denial of compensation or total disgorgement of fees already paid. *In re Kowalski*, 402 B.R. 843, 848 (Bankr. N.D.Ill. 2009) (citation omitted). The extent to which counsel is sanctioned rests in the court's sound discretion. *Id*.

Here, the court will not sanction Mr. Amore for his inadequate Disclosure because it was not raised by the Trustee's objection to Mr. Amore's request for supplemental compensation. Believing that complete and accurate disclosure is paramount, however, the court admonishes Mr. Amore for his failure to fully comply with his disclosure requirements.

Amore for the reasonable value of his services rendered in this case given the issues presented thereby. The court will thus award Mr. Amore $10,862.85 in supplemental compensation.[9]

---

[9] To the extent that the inclusion of Mr. Amore's supplemental award of $10,862.85 to be paid under the Debtor's confirmed Chapter 13 plan causes a reduction in the distribution to unsecured creditors in this case, the court finds that the confirmed plan can be modified without additional notice to unsecured creditors given the fact that the supplemental award is less than requested by Mr. Amore to which the unsecured creditors did not object after notice and a hearing.